The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL BONET,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | NO. 26-cv-00196-RSL<br><br>**ORDER GRANTING MOTION TO DISMISS** |

This matter comes before the Court on defendant City of Seattle's motion to dismiss plaintiff Michael Bonet's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 6. Plaintiff opposes the motion. Dkt. 14. Having reviewed the parties' submissions, the record of the case, and the relevant legal authority, the Court grants the motion for the reasons set forth below.

**BACKGROUND**

Plaintiff was employed as a police officer with the Seattle Police Department ("SPD") by the City of Seattle for more than 20 years. Dkt. 1 ¶ 17. In August 2021, the City implemented a COVID-19 vaccine mandate that required unvaccinated City employees to become vaccinated as a condition of employment. The mandate permitted employees to request medical or religious exemptions and accommodations. *Id.* ¶¶ 14–15.

On September 22, 2021, plaintiff requested a religious exemption from the vaccine mandate. *Id.* ¶ 23. The City initially denied the request but invited plaintiff to provide additional information. *Id.* ¶ 24. Plaintiff submitted a revised request and the City approved his religious exemption on October 12, 2021. *Id.* ¶¶ 25–26. According to plaintiff, however, approval of the exemption did not result in an accommodation that allowed him to continue working. Instead, he was placed on unpaid leave, lost access to his work email, and was not permitted to report to his workstation or enter City property. *Id.* ¶¶ 27, 29. Plaintiff alleges that the City did not engage in an interactive process to determine whether he could continue performing his duties while unvaccinated through some other accommodation. *Id.* ¶ 29, 32. He proposed several alternatives and alleges that the City instead adopted a categorical approach of not accommodating employees with religious exemptions, while permitting accommodations for employees with medical exemptions. *Id.* ¶¶ 30–34.

Plaintiff alleges that in late March 2022, while he remained on unpaid leave, an SPD officer contacted him and asked for permission to access his locked work locker so that his SWAT gear could be issued to another officer. Dkt. 1 ¶ 42. Plaintiff refused because he intended to return to the SWAT team. *Id.* ¶ 43. In early April 2022, plaintiff learned that an SPD employee had nevertheless entered the locker and removed the gear. *Id.* ¶ 45. Plaintiff alleges that this event made clear to him that the City did not intend to return him from unpaid leave or offer him a reasonable accommodation. *Id.* ¶ 46. Plaintiff further alleges that the conditions imposed by the City amounted to a constructive discharge, and he resigned on or around June 30, 2022. *Id.* ¶¶ 35–36.

The City rescinded its vaccine mandate on February 10, 2023. Dkt. 1 ¶ 37. Thereafter, plaintiff contacted his former chain of command seeking to return to his prior position. *Id.* ¶ 38. He alleges that he was informed that he could not simply be reinstated and would instead be required to undergo a re-hiring or reinstatement process. *Id.* ¶ 39. Plaintiff further alleges that officers who had requested exemptions but remained employed on unpaid leave were not required to undergo the same process when the mandate ended. *Id.* ¶ 40.

Plaintiff submitted a tort claim to the City on October 31, 2025, and filed this action on January 20, 2026. The City filed the present motion to dismiss on February 18, 2026. Dkt. 6.

## LEGAL STANDARD

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a “plausible” ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must “accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.” *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). “A statute-of-limitation defense, if apparent from the face of the complaint, may properly be raised in a motion to dismiss.” *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). If the complaint fails to raise a plausible inference that plaintiff is entitled to relief, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010).

## DISCUSSION

Plaintiff challenges the City’s implementation of its COVID-19 vaccine mandate and the employment-related actions it took after he requested a religious exemption, alleging that those actions constituted religious discrimination and retaliation and subjected him to a hostile work environment. He asserts ten causes of action. His first three claims arise under the Washington Law Against Discrimination (“WLAD”), RCW

ch. 49.60, *et seq*. He also asserts a Washington common-law claim for wrongful discharge in violation of public policy, two state-law privacy claims arising from the alleged search of his work locker, and four claims under 42 U.S.C. § 1983 alleging violations of the Fourth Amendment, the Free Exercise Clause, the Due Process Clause, and the Equal Protection Clause. Dkt. 1. The parties agree that each cause of action is subject to a three-year limitations period.

The City argues that all of plaintiff's claims are untimely because the conduct giving rise to them occurred no later than June 2022, when plaintiff alleges that he was constructively discharged. Dkt. 6. Plaintiff does not dispute that the initial denial of his religious-exemption request, the alleged failure to accommodate him, his placement on unpaid leave, the locker incident, and his constructive discharge all occurred more than three years before he filed this action on January 20, 2026. He instead contends that the City's conduct constituted a continuing violation and pattern or practice of discrimination that extended into 2023, when the vaccine mandate was rescinded and the City required him to pursue a reinstatement process before returning to employment. Dkt. 14. Plaintiff expressly disclaims a separate discrimination or retaliation claim based on the 2023 events but maintains that those events render his earlier claims timely. The City responds that the continuing-violation and pattern-or-practice doctrines cannot revive claims based on discrete acts that occurred outside the limitations period. Dkt. 15.

**A. WLAD Claims**

Plaintiff's three WLAD claims allege that the City discriminated against him because of his religious beliefs, subjected him to a hostile work environment, and retaliated against him for seeking a religious exemption and accommodation from the vaccine mandate. The WLAD prohibits discrimination and retaliation in employment on the basis of sex, race, sexual orientation, religious beliefs, and other protected characteristics. *See Cornwell v. Microsoft Corp*., 192 Wn.2d 403, 411 (2018); *Kumar v. Gate Gourmet, Inc*., 180 Wn.2d 481, 501–02 (2014). WLAD claims are subject to a three-year limitation period. *See Diemert v. City of Seattle*, 689 F. Supp. 3d 956, 966 (W.D. Wash. 2023). When that period begins to run depends on the nature of the claim. For claims based on discrete acts—acts that "'occurred' on the day that [they] 'happened,'" such as termination, failure to promote, or refusal to hire—the limitation period runs from the act itself. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Antonius v. King County*, 153 Wn.2d 256, 264 (2004). A discrete act that falls outside the limitation period is not actionable merely because it relates to an act that falls within the period. *Antonius*, 153 Wn.2d at 264 (citing *Morgan*, 536 U.S. at 113–15).

Hostile work environment claims, by contrast, "are different in kind from discrete acts." *Id*. Such claims are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117. Accordingly, it

does not matter that "some of the component acts of the hostile work environment fall outside" the limitations period. *Id*. If an act "contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability." *Id*.

**1. The WLAD claims based on discrete acts (Claims 1 and 3)**

The acts underlying Claims 1 and 3 are discrete acts for limitations purposes. Each involves an identifiable employment decision or event occurring at a particular time rather than conduct that becomes actionable only through its cumulative effect. *See Morgan*, 536 U.S. at 110, 114; *Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir. 2003). Plaintiff does not dispute that the acts underlying his discrimination and retaliation claims—alleged failure to accommodate, placement on unpaid leave, locker-related action, and alleged constructive discharge—all occurred no later than June 2022. Plaintiff filed his complaint on January 20, 2026, more than three years later. He nevertheless argues that those acts are timely under the continuing-violation doctrine because the City allegedly continued to discriminate and retaliate against him during his March and April 2023 efforts to return to his former position. According to plaintiff, the City's requirement that he pursue the reinstatement process, rather than simply return to his former position, was part of the same course of discrimination and retaliation that resulted in his constructive discharge.

He therefore contends that the 2023 events, which occurred within the limitations period, serve as an "anchor" rendering the earlier acts timely.

Alternatively, plaintiff argues that the City maintained a categorical policy or practice of refusing workable accommodations to Christian employees who sought religious exemptions from the vaccine mandate, and that this policy remained in effect until the mandate was rescinded in February 2023. On this theory, because the alleged discriminatory "pattern or practice" continued into the three-year limitations period, plaintiff contends that his earlier accommodation and constructive-discharge claims are also timely.

Plaintiff's continuing-violation theory is foreclosed by *Morgan* and the cases applying it. In *Morgan*, the Supreme Court rejected the proposition that otherwise untimely discrete discriminatory or retaliatory acts become actionable merely because they are related to acts occurring within the limitations period. 536 U.S. at 113. Rather, "[e]ach discrete discriminatory act starts a new clock," and a timely discrete act does not revive earlier, time-barred acts. *Id*. The Ninth Circuit subsequently recognized that *Morgan* "invalidated [its] previous application of the continuing violation doctrine to discrete acts of discrimination and retaliation," *Lyons v. England*, 307 F.3d 1092, 1106 (9th Cir. 2002), and has since observed that, apart from hostile-work-environment claims,

"little remains of the continuing violations doctrine." *Bird v. Dep't of Human Servs*., 935 F.3d 738, 748 (9th Cir. 2019).

Washington courts apply the same rule to WLAD claims. *See Broyles v. Thurston County*, 147 Wn. App. 409, 433–35 (2008) (explaining, under *Morgan* and *Antonius*, that for discrete discriminatory acts the limitations period runs from the act itself and an untimely discrete act is not actionable even if it relates to acts alleged in timely filed charges). Thus, even assuming the City's treatment of plaintiff during the 2023 reinstatement process constituted a related act of discrimination or retaliation, that relationship would not render the discrete acts occurring in 2021 and 2022 timely.[1]

Plaintiff's alternative pattern-or-practice theory fares no better. In *Cherosky*, the Ninth Circuit considered materially similar circumstances: employees challenged individualized denials of accommodation that occurred outside the limitations period but argued that their claims remained timely because the denials were made pursuant to an allegedly discriminatory policy that continued in effect during the limitations period. 330 F.3d at 1244–47. Relying on *Morgan* and *Lyons*, the court rejected that argument, holding that "[t]he allegation that these discrete acts were undertaken pursuant to a discriminatory

---

[1] Plaintiff expressly states that he "is not alleging a separate 'failure to hire' (or 'failure to reinstate') theory for discrimination or retaliation." Dkt. 14 at 9. The Court therefore does not consider whether the City's handling of plaintiff's 2023 reinstatement request could independently support a timely WLAD discrimination or retaliation claim.

policy does not extend the statutory limitations period." *Id*. at 1247. The court further explained that an assertion that discrete acts flowed from a company-wide or systematic discriminatory practice does not establish liability for acts occurring outside the limitations period. *Id*. (quoting *Lyons*, 307 F.3d at 1107). *Bird* subsequently confirmed that, although the systematic branch of the continuing-violation doctrine may retain vitality for class-wide pattern-or-practice claims, the Ninth Circuit has "consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred." 935 F.3d at 748. Plaintiff brings individualized discrimination and retaliation claims based on actions taken against him; he does not bring a class-wide pattern-or-practice claim. Accordingly, the continued existence of the City's alleged policy of refusing to accommodate Christian employees after plaintiff's June 2022 resignation does not render timely the discrete acts taken against him in 2021 and 2022. Claims 1 and 3 are untimely.

**2. The WLAD claim based on hostile work environment (Claim 2)**

Plaintiff's hostile-work-environment claim requires a different limitations analysis. As stated above, unlike a claim based on a discrete wrongful act, a hostile work environment claim is based on the cumulative effect of repeated conduct and therefore may encompass conduct occurring outside the limitations period. *Antonius*, 153 Wn.2d at 264. But at least one act contributing to the same hostile work environment must have

occurred within the limitations period. *Id*. at 264, 271–72. In determining whether conduct occurring at different times forms part of the same actionable hostile environment, the relevant question is whether the acts are sufficiently related to constitute the same unlawful employment practice. *Id*. at 271–72; *Broyles*, 147 Wn. App. at 434–37. Discrete employment actions remain distinct from the repeated harassing conduct that comprises a hostile work environment; although such acts may in appropriate circumstances provide evidence relevant to a hostile-environment claim, they do not thereby become component acts of the hostile environment. *Broyles*, 147 Wn. App. at 433–35.

Even assuming, without deciding, that plaintiff's allegations concerning the period before his June 2022 resignation are sufficient to state an actionable hostile-work-environment claim, the complaint does not allege an act contributing to that environment on or after January 20, 2023. Plaintiff alleges that, while employed, he was ostracized and humiliated before his peers because of his religion and the stigma associated with being unvaccinated, subjected to frequent harassment by other SPD employees, and exposed to a workplace in which the City allegedly "st[oked] tensions" and failed to remedy the harassment. Dkt. 1 ¶¶ 60–68. The conduct alleged in 2023 is different in kind. After the vaccine mandate was rescinded, plaintiff sought to return to his former position and was informed that he would be required to pursue the City's reinstatement process. *Id*. ¶¶ 37–41. The complaint does not allege that plaintiff was subjected during that process to the

ostracism, humiliation, harassment, or other workplace conduct on which his hostile-work-environment claim is based. Plaintiff's conclusory allegation that the hostile work environment "continued" through the re-hiring process, *id*. ¶ 41, does not identify any timely act of harassment contributing to the same hostile environment. The 2023 reinstatement process therefore does not supply the timely component act required by *Antonius*.

The fact that plaintiff was no longer employed by the City during the 2023 events further supports this conclusion. Courts considering analogous hostile-work-environment claims have distinguished post-termination employment actions from conduct comprising the employee's former workplace environment. *See Shepherd v. City of Seattle*, 2023 WL 2185870, at *2 (W.D. Wash. Feb. 23, 2023) (concluding that conduct occurring after the plaintiff's termination could not form the basis of his hostile-workplace claim because he was no longer employed); *Gartrell v. DeJoy*, 2025 WL 1533477, at *3 & n.5 (D. Or. Mar. 31, 2025) (treating post-termination applications as context rather than part of the hostile environment experienced during employment and observing that a hostile work environment cannot exist after the employment relationship has terminated). Accordingly, because the complaint alleges no act contributing to plaintiff's hostile work environment within the three-year limitations period, Claim 2 is untimely.

**B. The Wrongful Discharge Claim (Claim 4)**

Plaintiff's wrongful-discharge claim is likewise untimely. The parties agree that such a claim is subject to a three-year limitations period. A wrongful-discharge claim based on constructive discharge accrues when the employee gives notice of resignation or, depending on the circumstances, on the employee's last day of employment. *See Barnett v. Sequim Valley Ranch, LLC*, 174 Wn. App. 475, 487 (2013). Plaintiff alleges that the conditions imposed by the City amounted to a constructive discharge and that he involuntarily resigned in June 2022. Dkt. 1 ¶¶ 35–36. Thus, under either potential accrual date, his wrongful-discharge claim accrued no later than June 30, 2022, more than three years before this action was filed.

Plaintiff argues that the City's allegedly discriminatory conduct continued into 2023 through its handling of his request for reinstatement. But those later events occurred after the alleged constructive discharge on which Claim 4 is based and do not alter the accrual date of that completed tort. Plaintiff does not allege a second or later discharge, nor does he identify any authority establishing that a post-employment reinstatement process postpones or restarts the limitations period for a wrongful-discharge claim. Claim 4 is therefore untimely.

### C. Claims Arising from the Search of Plaintiff's Locker (Claims 5-7)

Claims 5 through 7 all arise from the alleged entry into and search of plaintiff's work locker. Claim 5 asserts a common-law invasion-of-privacy claim, Claim 6 asserts a violation of article I, section 7 of the Washington Constitution, and Claim 7 asserts an unreasonable-search claim under the Fourth Amendment pursuant to 42 U.S.C. § 1983. Dkt. 1 ¶¶ 85–110. The parties agree that each claim is subject to a three-year limitations period.

Under both Washington and federal law, these claims accrued when plaintiff knew or reasonably should have known the facts giving rise to the claim. *See White v. Johns-Manville Corp*., 103 Wn.2d 344, 351 (1985); *TwoRivers v. Lewis*, 174 F.3d 987, 991–92 (9th Cir. 1999). Plaintiff alleges that, in early April 2022, he was informed that an SPD employee had entered his locked work locker without his consent and removed his SWAT gear. Dkt. 1 ¶¶ 42–46, 89, 99, 104–110. Plaintiff alleges no later search, intrusion, or seizure. Thus, even accepting plaintiff's allegations as true, Claims 5–7 accrued no later than April 2022, and the three-year limitations period had expired before plaintiff filed this action on January 20, 2026. Claims 5, 6, and 7 are therefore untimely.

### D. The Constitutional Claims (Claims 8-10)

Claims 8 through 10 allege violations of both the United States Constitution and the Washington Constitution. Claim 8 alleges that the City violated plaintiff's right to the

free exercise of religion under the First Amendment and the Washington Constitution by refusing to accommodate his religious objection to the vaccine mandate; Claim 9 alleges violations of substantive and procedural due process under the Fourteenth Amendment and the Washington Constitution; and Claim 10 alleges violations of equal protection under the Fourteenth Amendment and the Washington Constitution based on the City's allegedly disparate treatment of employees seeking religious exemptions. Plaintiff brings his federal constitutional claims pursuant to 42 U.S.C. § 1983.

Claims 8 through 10 are likewise untimely. As noted above, the parties agree that these claims—whether premised on the United States Constitution or the Washington Constitution—are subject to a three-year limitations period. Claim 8 is based on the City's alleged refusal to accommodate plaintiff's religious objection to the vaccine mandate, and Claim 9 is based on the conditions the City allegedly imposed on his continued employment and the process afforded before he was allegedly deprived of his asserted employment and bodily-autonomy interests. Dkt. 1 ¶¶ 111–130. Plaintiff knew of those alleged injuries when they occurred and, in any event, by the time he resigned in June 2022. Thus, the conduct giving rise to Claims 8 and 9 occurred no later than June 2022. The City's continued maintenance of the vaccine mandate after plaintiff was no longer employed did not itself inflict a new injury on plaintiff or restart the limitations period. *See Flynt v. Shimazu*, 940 F.3d 457, 462–63 (9th Cir. 2019) (explaining that continued

enforcement gives rise to a new claim and a new limitations period when it inflicts a new or repeated injury). Claims 8 and 9 therefore accrued more than three years before plaintiff filed this action.

Claim 10 fares no differently. Although plaintiff alleges that he was treated differently from employees who received medical exemptions and from employees who returned to their former positions after the vaccine mandate was lifted, Dkt. 1 ¶¶ 132–38, he expressly disclaims any separate failure-to-hire or failure-to-reinstate theory of discrimination based on the City's 2023 conduct. Dkt. 14 at 9. Instead, he relies on the 2023 reinstatement process to anchor his earlier constitutional claim under a continuing-violation theory. But plaintiff does not allege that the 2023 reinstatement process independently caused the constitutional injury asserted in Claim 10. Accordingly, those later events do not supply a new accrual date for that claim. *See Flynt*, 940 F.3d at 462–63. Claim 10 is therefore untimely.

**E. Leave to Amend**

Plaintiff requests leave to amend in the event the Court grants the City's motion. Dkt. 14 at 9 n.4. The Ninth Circuit has instructed that, when dismissing a complaint for failure to state a claim, "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (internal quotation marks

omitted). If the deficiencies identified in this Order can be remedied consistent with Federal Rule of Civil Procedure 11, plaintiff may file an amended complaint within thirty (30) days of the date of this Order.

**CONCLUSION**

For the foregoing reasons, the City's motion to dismiss (Dkt. 6) is GRANTED. Plaintiff's complaint is DISMISSED without prejudice and with leave to amend.

Dated this 24th day of September 2026.

Robert S. Lasnik
United States District Judge